## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| NATALIE BENJAMIN, | |
| *Plaintiff*, | |
| v. | Case No.: |
| CRYSTAL LAKE ACADEMY, INC d/b/a COSMETOLOGY AND SPA ACADEMY, | |
| *Defendant*. | **JURY DEMANDED** |

## COMPLAINT

NOW COMES the Plaintiff, NATALIE BENJAMIN ("Natalie" or "Plaintiff"), by and through her attorneys, THE FISH LAW FIRM, P.C. and for her complaint against the Defendant, CRYSTAL LAKE ACADEMY, INC d/b/a COSMETOLOGY AND SPA ACADEMY ("CLA" or "Defendant"), states as follows:

## NATURE OF ACTION

1.      This action is brought by Plaintiff Natalie Benjamin, pursuant to the Americans with Disabilities Act of 1990, as amended ("ADA" or "ADAAA"), 42 U.S.C. § 12101, *et seq*, seeking relief for illegal discrimination in violation of the ADA. Furthermore, Plaintiff brings the following claims for failure to pay final paycheck, failure to pay commissions in violation of the Illinois Wage Payment and Collections Act, 820 ILCS 115/1, et seq. ("IWPCA"), as well as retaliatory discharge for Defendant terminating her for requesting her unpaid commissions and wages.

## PARTIES

2.     Plaintiff, Natalie Benjamin, is an individual residing within the jurisdictional boundaries of this Court.

3.     Defendant CRYSTAL LAKE ACADEMY, INC d/b/a COSMETOLOGY AND SPA ACADEMY ("Crystal Lake" or "Defendant"), is a corporation doing business in the State of Illinois and is either registered or incorporated under the laws of the State of Illinois.

4.     At all relevant times, CLA employed in excess of 50 employees and was thus an employer and covered entity as defined under the ADA.

## JURISDICTION & VENUE

5.     This Court has original jurisdiction over Plaintiff's ADA claims under 28 U.S.C. §§ 1331 and 1343.

6.     This Court has supplemental jurisdiction over Plaintiff's state wage claims under 28 U.S.C. 1367(a).

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1291(b) because Defendant resides in this District and all of the alleged unlawful employment practices giving rise to this Complaint occurred within this District.

## ADMINISTRATIVE EXHAUSTION

8.     Natalie has exhausted all mandatory pre-complaint procedures required by law by filing timely administrative complaints with the Illinois Department of Human Rights and the U.S. Equal Employment Opportunity Commission.

9.     More specifically, Natalie filed Charge No. 440-2021-01454 on December 22, 2020.  On May 13, 2021, the EEOC issued its "Notice of Right to Sue" acknowledging Natalie's

charge of discrimination and directing Natalie to file suit. A copy of the EEOC Charge and the Notice of Right to Sue is attached hereto as Exhibit 1.

10.     Natalie files this complaint against CLA within 90 days of her receipt of the EEOC Notice.

## FACTS COMMON TO ALL COUNTS

11.     Around June 22, 2020, Natalie was hired by CLA as an Admissions Advisor/Career Planner.

12.     As part of her pay, Natalie was supposed to receive a $100 commission per student she enrolled.

13.     Natalie suffers from epilepsy.

14.     Due to her epilepsy, Natalie takes medication to keep her condition under control.

15.     One of the side-effects of Natalie's epilepsy medication is drowsiness, nausea, and memory loss. As a result, Natalie requires extra time in the mornings before coming into work, which causes her to be late.

16.     Throughout her employment, Natalie met or exceeded CLA's legitimate expectations.

17.     Due to her positive performance, around September 7, 2020, at a staff meeting with management and the owners, Natalie was praised in front of her colleagues by one of the owners Ned Halimi for her outstanding performance. Specifically, her high conversion rate.

18.     It was noted that Natalie had the highest conversion rate in the Defendant's history.

19.     During said meeting, Natalie was asked to describe her strategy to the others.

20.     Around the middle of September/early October of 2020, Natalie began to experience medical problems related to her epilepsy. Due to her health issues, Natalie began requesting time off to seek medical treatment and recover.

21.     Also, around October of 2020, Natalie began to question Defendant about her commissions and why she had not received them. Natalie also complained that her check was short because she had forgotten to punch in and punch out on certain dates due to the memory loss side-effect caused by her epilepsy medicine.

22.     Natalie complained in many instances about not receiving her commissions. Defendant ignored her complaints.

23.     Throughout her employment, Natalie forgot to punch in and punch out on a number of occasions and notified the owners, but it was never fixed.

24.     On or around October 5, 2020, Natalie had to go to the emergency room because her heart began beating really fast. She notified Defendant about this and shared that she was going to get further exams done and had to wear a heart monitor.

25.     Unfortunately, on October 7, 2020, Natalie got sick with a fever and asked the other owner, Gentiana "Genta" Halimi if she could be accommodated and work from home.

26.     Genta allowed Natalie to work from home but was not fond of having to accommodate her and told her via text "you been (sic.) sick often is getting the team behind," despite that Natalie was still keeping up with her workload and making up any work she missed while she was out.

27.     The ongoing pressure and stress from work caused Natalie's condition to exacerbate.

28.     Due to Natalie's ongoing health issues, around November 2020 CLA began scrutinizing her attendance, specifically her tardiness.

29.     Prior to November 2020, Natalie was never reprimanded for not being to work on time.

30.     On November 2, 2020, Natalie again raised to Defendant that her check was short.

31.     That same day, Natalie was yelled at and given a verbal warning for her tardiness.

32.     Other non-disabled employees were also late but were not reprimanded, like the Financial Aid Advisor Mira.

33.     Natalie explained to the owner, Ned, that she was late due to the medication that she took for her epilepsy.

34.     Due to the stress that she was experiencing, on November 3, 2020, Natalie suffered a panic attack and had to see a doctor.

35.     Defendant continued scrutinizing Natalie's work and exacerbating her condition to the point that on November 5, 2020, Natalie almost fainted at work.

36.     Natalie was extremely concerned about her health and around November 8, 2020, she asked Genta for an accommodation. Natalie told the owner that because of the immense stress she was under and her declining health, she needed to take the following day off. Specifically, Natalie shared that she was feeling sick and experiencing heart palpitations.

37.     In response, Genta told Natalie that she would take that as Natalie's resignation. Natalie explained that she was not resigning and would return to work.

38.     On November 18, 2020, the Director of Admissions Josephine Krause conducted a video call with Plaintiff and questioned her about her tardiness from months prior. Natalie explained it was because of her epilepsy medication.

39.     In response, Josephine asked, "what type of meds make people late" and then told Natalie that her "medical condition is no excuse to be late for work" or words to that effect.

40.     During the video call, Defendant terminated Natalie.

### COUNT I
### Disability Discrimination

41.     Natalie re-pleads and re-alleges Paragraphs 1 through 40 as if fully plead herein.

42.     The ADA makes it unlawful for an employer such as CLA to discriminate against a qualified individual on the basis of a disability in regard to the discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment, including a failure to make reasonable accommodations to the known physical and mental limitation of an employee who is otherwise a qualified individual with a disability. See 42 U.S.C §12112(a) and (b).

43.     Natalie has epilepsy.

44.     At all relevant times, Natalie was "disabled" as defined under ADA.

45.     At all relevant times, Natalie was a "qualified individual" as defined under the ADA. See 42 U.S.C § 2111(8).

46.     Due to her epilepsy medications, Natalie was late to work but was not reprimanded for this until November 2020.

47.     Other non-disabled employees are late for work and not reprimanded.

48.     Starting in October 2020, Natalie requested time off because she was experiencing health complications. Despite this, Natalie managed to keep up with her work and make up her missed time.

49.     On November 2, 2020, Natalie was reprimanded for being late despite explaining to Defendant that it was due to her medical condition and ultimately terminated on November 18, 2020 for this.

50.     Additionally, throughout her employment, Natalie was subject to discriminatory comments by Defendant about her condition and/or need to take time off because of her health including, but not limited to:

  a. "You been (sic.) sick often is getting the team behind;"

  b. "What type of meds make people late;" and

  c. "Your medical condition is no excuse to be late for work."

51.     As a direct and proximate cause of CLA's illegal conduct as described above, Natalie has lost, and is expected to continue to lose, income in the form of wages, social security, and other benefits in a sum to be proven at trial, and has suffered emotional and physical pain, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

52.     CLA knew that its acts as described above were prohibited by the ADA or acted with reckless disregard to that possibility. CLA should, therefore, be subject to punitive damages as an example to deter others from engaging in conduct of this kind.

WHEREFORE, Plaintiff prays for judgment regarding all of her claims as follows:

  a. Equitable and prospective declaratory and injunctive relief

  b. Compensatory damages allowed by law;

  c. Exemplary or punitive damages allowable by law;

  d. Pre- and post-judgment interest, costs, attorneys' fees; and

  e. Any other relief to which Plaintiff may be entitled under the applicable federal and state laws and such other relief as the Court deems just and equitable.

## **COUNT II**
### **Wage Allegations**

53.    Natalie re-pleads and re-alleges Paragraphs 1 through 52 as if fully plead herein.

54.    The IWPCA required employers to pay employees "not later than 13 days after the end of the pay period in which wages were earned." *See* 820 ILCS 115/4.

55.    When Natalie worked for Defendant, she was promised a $100 commission for every student that she enrolled.

56.    Natalie was one of the top salespeople at CLA and had an approximate 80% conversion rate for new students.

57.    Natalie was never paid her commissions for enrolling new students.

58.    Upon her departure, Natalie was also not paid for the full amount of her last paycheck.

WHEREFORE, Plaintiff prays for judgment regarding all of her claims as follows:

a.    Equitable and prospective declaratory and injunctive relief

b.    Compensatory damages allowed by law;

c.    Exemplary or punitive damages allowable by law;

d.    Pre- and post-judgment interest, costs, attorneys' fees; and

e.    Any other relief to which Plaintiff may be entitled under the applicable federal and state laws and such other relief as the Court deems just and equitable.

## <u>COUNT III</u>
## Retaliation in Violation of the IWPCA

59.     Natalie re-pleads and re-alleges Paragraphs 1 through 58 as if fully plead herein.

60.     The IWPCA forbids retaliation and discrimination against an employee "because that employee has made a complaint to his employer … that he or she has not been paid in accordance with the provisions of this Act" and creates a private right of action against employers for doing so. *See* 820 ILCS 115/14.

61.     Natalie engaged in protected activity under the IWPCA when she requested to be paid for her commissions.

62.     Starting in October 2020, Natalie complained on several occasions that she was due commissions, along with the fact that her check was short.

63.     When she complained to Defendant on November 2, 2020, she was given a verbal warning for being late.

64.     Other employees who did not engage in protected activity were regularly late and not reprimanded, nonetheless terminated.

65.     Less than a month after her last complaint, Natalie was terminated.

66.     Natalie was terminated in retaliation for complaining about Defendant violating the IWPCA.

WHEREFORE, Plaintiff prays for judgment regarding all of her claims as follows:

a.  Equitable and prospective declaratory and injunctive relief

b.  Compensatory damages allowed by law;

c.  Exemplary or punitive damages allowable by law;

d.  Pre- and post-judgment interest, costs, attorneys' fees; and

e.  Any other relief to which Plaintiff may be entitled under the applicable federal and state laws and such other relief as the Court deems just and equitable.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all questions of fact raised by this complaint.

Dated: August 11, 2021                                Respectfully Submitted,


                                                      /s/ Thalia Pacheco
                                                      One of Plaintiff's Attorneys


Mara Baltabols
Thalia Pacheco
THE FISH LAW FIRM P.C.
200 East 5th Avenue, Suite 123
Naperville, IL 60563
Phone: (630)355-7590
Fax: (630)778-0400
docketing@fishlawfirm.com
mara@fishlawfirm.com
tpacheco@fishlawfirm.com